IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DAVID LEE TIDWELL**                                                                  **PLAINTIFF**
**ADC #141699**

V.                  **NO. 4:20-cv-00787-BRW-ERE**

**JAMES GIBSON,** *et al.*                                                 **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**     **Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to United States District Judge Billy Roy Wilson. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Judge Wilson may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.**     **Background:**

Plaintiff David Lee Tidwell, an Arkansas Division of Correction (ADC) inmate, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983 alleging that

Defendant Brandon Medders,[1] Sergeant, Aaron Smith,[2] M.D., Gary Kerstein, M.D., Estell Bland, APN, and Amy Jones, Nurse, were deliberately indifferent to his serious medical needs.[3] *Doc. 2.*

Defendants Smith, Kerstein, Bland, and Jones (Medical Defendants) have filed a motion for summary judgment, statement of undisputed facts, and brief in support. *Docs. 166, 167, 168.* In addition, Defendant Medders has filed a motion for summary judgment, statement of undisputed facts, and brief in support. *Docs. 174, 175, 176.* Mr. Tidwell has responded to both motions. *Docs. 185, 186, 187, 188, 189, 190, 191, 192, 193, 194.*[4]

Thus, the issues are fully briefed and ripe for the Court's review.

### III.  Discussion:

####   A.  Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as

---

[1] The Clerk is instructed to update the docket sheet to include Defendant Medder's full name – Brandon Medders.

[2] The Clerk is instructed to update the docket sheet to include Defendant Smith's full name – Aaron Smith.

[3] The Court previously dismissed Mr. Tidwell's claims against Defendants Gibson and Griffin based on his failure to fully exhaust his administrative remedies. *Doc. 111.*

[4] In his responses to the Defendants' motion, Mr. Tidwell alleges that Defendant Bland retaliated against him. *(Doc. 187 at 2)* Because Mr. Tidwell did not raise that claim in his complaint, the Court will not address that claim in this Recommendation.

to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.    Factual Background[5]**

On October 22, 2019, Dr. Howard (not a party to this lawsuit), an orthopedist at the University of Arkansas for Medical Sciences (UAMS), examined Mr. Tidwell. *Doc. 168-1 at 1.* Dr. Howard noted that Mr. Tidwell suffered from osteoarthritis and had previously received a gel injection. *Id.* He recommended that Mr. Tidwell continue wearing a brace on his right knee. *Id.* Mr. Tidwell's encounter notes for

---

[5] The facts are taken from Mr. Tidwell's medical records. Unless otherwise stated, the facts are undisputed.

that date do not indicate that Dr. Howard recommended that Mr. Tidwell be issued either a script for a shower chair or four-hour duty at that time.[6] *Id.*

On November 20, 2019, Defendant Jones examined Mr. Tidwell during sick call. *Id. at 19*. At that time, Mr. Tidwell requested a boot script and a shower chair.

On November 22, Defendant Smith examined Mr. Tidwell. *Id. at 20*. He noted that Mr. Tidwell was "ambulating well [with] no edema of his LE [lower extremities]," "no sores," and normal feet. *Id.* As a result, he concluded that there was "no indication" for him to issue Mr. Tidwell a boot or a shower chair at that time. *Id.* The encounter notes do not indicate whether Defendant Smith and Mr. Tidwell discussed a four-hour work script on that date.

On November 27, Mr. Tidwell submitted a sick-call request explaining that he had fallen in the shower and had injured his knee and ankle. *Id. at 2*. He explained that, because he could not wear his knee brace in the shower, he requested a shower chair to prevent him from falling. *Id.*

On the same day, Defendant Jones examined Mr. Tidwell. *Id. at 23*. She noted: (1) that he was able to "ambulate without difficulty"; (2) no swelling or deformity

---

[6] In his response to the Defendants' motions for summary judgment, Mr. Tidwell attaches his UAMS medical records. *Doc. 190*. According to those records, on July 22, 2019, Dr. Howard recommended "decreased standing time at work." *Id. at 11*. Dr. Howard made that recommendation over four months before Mr. Tidwell reported falling and before Mr. Tidwell received a gel injection. Furthermore, Mr. Tidwell's medical records also indicate that, following the gel injection on October 22, 2019, "he was able to return to work." *Id. at 35*. Accordingly, such evidence does not create a genuine dispute of material fact regarding the issues raised in this case.

4

to his ankle; and (3) no swelling or deformity to his knee. *Id.* Defendant Jones issued Mr. Tidwell a compression bandage and instructed him on its use. *Id.* Defendant Jones' notes from that encounter indicate that she spoke with Defendant Smith about providing Mr. Tidwell a crutch on that date. *Id.* According to the encounter notes, Defendant Smith determined that a crutch was medically indicated. *Id.*

Over the next two months, Mr. Tidwell did not report any further complaints regarding his knee or ankle.

On January 30, 2020, Mr. Tidwell submitted a sick-call request stating that he had a bad knee and that he had fallen in the shower based on the medical staff's failure to provide him a shower chair. *Id. at 4.* He requested a crutch and a shower chair. *Id.*

On February 3, Defendant Jones noted that Mr. Tidwell had refused to be evaluated at sick call. *Id. at 5, 39.* According to Mr. Tidwell, he could not walk to the infirmary on that date and needed to be transported in the a "wheeled chair." *174-1 at 3-4.*

On February 19, Mr. Tidwell submitted a sick-call request explaining that, following his fall in the shower in January, he had continually requested to be evaluated by a nurse so that he could be referred to a physician. *Doc. 168-1 at 6.* He stated that he could no longer bear weight on his right knee and that he could not walk or stand. He requested: (1) a crutch, cane, or shower chair to prevent future

falls; (2) a wheelchair to be transported to the infirmary; (3) to be examined by an orthopedist; and (4) an examination of his knee and ankle. *Id.*

On February 21, Nurse Danielle Johnson (not a party to this lawsuit) examined Mr. Tidwell during sick call. *Id. at 42*. She noted swelling in his right lower extremity and "[o]ld discoloration." *Id.* She referred to Mr. Tidwell to the provider. *Id.*

On February 28, Defendant Bland submitted an orthopedist consultation request form for an assessment of Mr. Tidwell's knee. *Id. at 7, 44*.

On the same day, Mr. Tidwell had a telemedicine visit with Defendant Kerstein. *Id. at 9*. During that encounter, Defendant Kerstein noted that Mr. Tidwell was ambulating with his knee brace, but that his knee and ankle did not appear swollen. *Id. at 45*. Although Mr. Tidwell requested a shower chair, Defendant Kerstein did not issue a script for a shower chair at that time. *Id.*

The next day, Mr. Tidwell submitted another sick-call request. *Id. at 11*. He complained that he had re-injured his knee during a fall in the shower. *Id.* He requested: (1) a shower chair; (2) a cane; (3) a knee brace; and (4) a renewal of his scripts for his knee brace and shoe lift. *Id.*

On March 2, Nurse Spradlin (not a party to this lawsuit) examined Mr. Tidwell. *Id. at 46*. The encounter notes from that date indicate that Mr. Tidwell told Nurse Spradlin that, if he was wearing his knee brace, he was "ok," but, if he was

not wearing his knee brace, he fell a lot. *Id.* Nurse Spradlin referred Mr. Tidwell to a provider. *Id.*

On March 9, Defendant Jones examined Mr. Tidwell based on his complaints of pain in his right knee and ankle. *Id. at 48.* She noted "pitting edema" to Mr. Tidwell's right lower extremity and ankle with no redness or warmth. *Id.* She referred Mr. Tidwell to a provider. *Id.*

On the same day, Defendant Bland examined Mr. Tidwell. *Id. at 49.* He again requested a shower chair and a cane. Defendant Bland noted "no gate abnormalities" and she determined that a shower chair and cane were not medically indicated. *Id.* She recommended that Mr. Tidwell discontinue taking nortriptyline due to his complaints of weak knees and falls. *Id.*

On March 13, Defendant Bland again examined Mr. Tidwell. *Id. at 50.* She noted no swelling or discoloration to his right lower extremity. *Id.* She advised Mr. Tidwell to continue taking Tylenol and nonsteroidal anti-inflammatory medications. *Id.*

On March 18, Dr. Howard evaluated Mr. Tidwell. *Id. at 12.* He performed an ultrasound of Mr. Tidwell's right knee, which revealed that Mr. Tidwell had not suffered any ligament or tendon injury. *Id.* Dr. Howard also ordered an x-ray examination of Mr. Tidwell's ankle. *Id.* The x-ray images indicated that Mr. Tidwell had not suffered a fracture of his ankle. *Id.* Dr. Howard recommended that Mr.

Tidwell be issued: (1) a walking boot for Mr. Tidwell's right ankle for two-to-three weeks; and (2) a shower chair. *Id.* He also instructed Mr. Tidwell to continue to use his knee brace. *Id.* At that encounter, Mr. Tidwell told Dr. Howard that he recovered from the previous fall within one to two weeks. *Id.*

The next day, Defendant Bland: (1) renewed Mr. Tidwell's scripts for his knee brace and lifts; (2) issued Mr. Tidwell three-week scripts for a short walking boot and a shower chair; and (3) prepared a follow-up orthopedic consultation request for Mr. Tidwell. *Id. at 14-15, 53*.

During the time period in question, medical staff provided Mr. Tidwell the following medications: (1) baclofen; (2) nortriptyline; (3) meloxicam; (4) acetaminophen; and (5) Keppra. *Doc. 168-1 at 17-18*.

On December 10, 2020 (almost six months after this lawsuit was filed), Dr. Howard examined Mr. Tidwell during a telehealth visit. *Doc. 103-1 at 21*. He concluded that Mr. Tidwell had a "normal ankle" with an active range of motion. *Id. at 22*. Dr. Howard also reviewed Mr. Tidwell's previous MRI imaging. *Id.* He determined that there was "no obvious fracture line," rather, a microfracture (bone bruise) was noted. Dr. Howard explained that injury should have been "healing well this far out from injury." *Id.*

### C. Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Likewise, disagreement with treatment decisions cannot support a deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006); see also *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create disputed material fact). Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)); see also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment Claim, inmate must show that defendants' mental state was akin to criminal recklessness). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066

(8th Cir. 2014) (internal citation omitted). Mr. Tidwell "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019).

### 1. The Medical Defendants' Motion for Summary Judgment

In support of their motion for summary judgment, the Medical Defendants present the declaration of Chris Horan, M.D., the Regional Medical Director for Wellpath LLC, the contracted private healthcare provider for the ADC. *Doc. 168-2*. Dr. Horan states that "Mr. Tidwell was assessed by providers and received appropriate medication throughout to treat his subjective complaints." *Id. at 10*. Furthermore, Dr. Horan explains that "no detrimental harm resulted from the lack of a shower chair or cane or 4-hour duty script." *Id.* Dr. Horan concludes that "Mr. Tidwell was provided with appropriate medical assessment and treatment for his complaints in light of objective findings, or lack thereof. He received appropriate care by Ms. Bland, Dr. Smith, and Dr. Kerstein for his complaints. There was absolutely no negligence or indifference demonstrated on their part." *Id. at 11*. Furthermore, he states that Defendant Jones' "medical decisions certainly did not negatively affect [Mr. Tidwell's] medical outcome." *Id.*

At the summary judgment stage, Mr. Tidwell's unsupported assertions that the Medical Defendants were deliberately indifferent are insufficient. "'When the movant makes a *prima facie* showing of entitlement to summary judgment, the

respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d 531, 539 (2000)).

Here, Mr. Tidwell has failed to come forward with any evidence from which a factfinder could conclude that the Medical Defendants' treatment decisions were even arguably criminally reckless. Furthermore, Mr. Tidwell has not come forward with any evidence contradicting Dr. Horan's testimony that he has received adequate medical care.

Based on a review of Mr. Tidwell's medical records, during the time period in question, medical staff: (1) consistently and promptly examined him; (2) referred and transported him to an outside specialist for examinations and treatment; and (3) consistently provided him pain medication. Such conduct can hardly be characterized as deliberate indifference. Although Mr. Tidwell may disagree with the treatment decisions made by the medical staff, a disagreement in treatment is not evidence of a constitutional deprivation. Accordingly, the Medical Defendants are entitled to judgment as a matter of law.

### 2. Defendant Medders' Motion for Summary Judgment

#### a. Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Tidwell's claims for money damages from Defendant Medders in his official capacity are barred by sovereign immunity.

#### b. Deliberate-Indifference Claim

Mr. Tidwell complains that Defendant Medders was deliberately indifferent to his serious medical needs by refusing to transport him by a "wheeled chair"[7] to the infirmary on February 3, 2020. *Doc. 174-1 at 3-4*.

Defendant Medders attaches Mr. Tidwell's deposition testimony to his motion. *Doc. 174-1*. According to Mr. Tidwell, on the date in question, Defendant Medders told him that he would go get a wheeled chair to transport him to the infirmary or he would have Defendant Jones come back to his cell to examine him. *Id. at 5*. Mr. Tidwell complains that neither Defendant Medders nor Defendant Jones returned to his cell. *Id*. The following day, Mr. Tidwell asked Defendant Medders why he never returned. Defendant Medders told Mr. Tidwell that Defendant Jones "said you could have walked down here." *Id. at 7*.

---

[7] In his deposition, Mr. Tidwell explains that ADC officials transport inmates using a "restraint chair that has wheels," rather than a wheelchair. *Doc. 174-1 at 4*.

While mere disagreement with medical treatment cannot support a deliberate-indifference claim, "[d]eliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment . . . ." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (internal citation omitted). Here, however, based on the evidence presented, Defendant Jones, rather than Defendant Medders, made the decision to deny Mr. Tidwell's request to be transported to the infirmary by the "wheeled chair."

Furthermore, in Dr. Horan's affidavit provided in support of the Medical Defendants' motion for summary judgment, he states, "the failure of Mr. Tidwell to be taken to this one sick call did not make a difference in the long haul. Mr. Tidwell's overall health, particularly relating to his arthritic knee and his ankle condition, was not detrimentally affected by him missing this one sick call." Doc. 168-2 at 4.

Again, Mr. Tidwell has failed to come forward with any evidence for a factfinder to conclude that Defendant Medders' conduct was even arguably criminally reckless. At most, Defendant Medders' failure to transport Mr. Tidwell to the infirmary on that date in question could be described as negligent, which fails to rise to a constitutional level. In addition, Mr. Tidwell has failed to present any evidence contradicting Dr. Horan's testimony. Therefore, Defendant Medders also is entitled to judgment as a matter of law on Mr. Tidwell's deliberate-indifference claim against him.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. The Medical Defendants' motion for summary judgment *(Doc. 166)* be GRANTED, and judgment entered in their favor on Mr. Tidwell's claims against them, all of which should be DISMISSED, with prejudice;

2. Defendant Medders' motion for summary judgment *(Doc. 174)* be GRANTED, and judgment entered in his favor on Mr. Tidwell's claims against him, all of which should be DISMISSED, with prejudice;

3. The Clerk be instructed to close this case.

DATED this 5th day of October, 2021.

_____
UNITED STATES MAGISTRATE JUDGE